UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AHMAD HALL

                                    Petitioner,

            -v.-                                              9:10-CV-130
                                                             (NAM/ATB)
DAVID ROCK,

                                    Respondent.


AHMAD HALL, 95-B-1538, Petitioner, *pro se*
THOMAS B. LITSKY, Assistant Attorney General, for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT and RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant

to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

**I.     Introduction**

Petitioner, Ahmad Hall,[1] seeks a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, challenging a July 26, 1995, judgment of conviction from the Onondaga

County Court.  (Petition ("Pet.") ¶¶ 1–2, Dkt. No. 1).  He raises following grounds in

support of his petition:

        (1) His confession was involuntary and should have been suppressed;

        (2) Petitioner's Sixth Amendment right to confront witnesses against him was

        violated when the court allowed hearsay testimony;

---

[1] Petitioner's name was mistyped on his petition as "Ahmed," which is how it appears on the
docket.  He clarified in his traverse that the proper spelling of his first name is "Ahmad."  (Dkt. No.
14).

(3) Petitioner's right to a fair trial was violated by the court's erroneous

evidentiary rulings;

(4) The Prosecutor's comments during summation denied petitioner a fair trial;

(5) Petitioner's trial counsel was ineffective;

(6) The cumulative effect of all the trial errors deprived petitioner of the right to

a fair trial; and

(7) Petitioner's sentence was harsh and excessive.

(Pet. pp. 7–14).[2]

Petitioner filed his *pro se* habeas corpus petition on February 4, 2010. (Dkt.

No. 1). Respondent has filed an answer, memorandum of law, and the pertinent state

court records. (Dkt. Nos. 10, 11, 12). For the following reasons, this court finds that

the petition should be denied and dismissed.

## II.   Background

### A.   Facts

On August 29, 1994, two men committed robbery in a house in which people

often gambled and obtained drugs. During the robbery, the men demanded and took

money from several individuals, and one of the perpetrators shot William Barton, who

later died in the hospital as a result of his wounds. Petitioner's photograph was

selected from a photo array as the shooter. While being interviewed by the police on

---

[2] Petitioner attached a document to his petition that explained the grounds he was asserting in support of his petition for a writ of habeas corpus. Petitioner numbered the pages in the attachment differently than those in the petition. For the sake of clarity, the court will cite to material in the attached documents according to page number as assigned by the court's Case Management/Electronic Case File system.

2

August 30, 1994, petitioner gave an oral and signed a written confession to the robbery and murder.  Petitioner's confession corroborated information obtained from numerous witnesses.  Petitioner then told police where they could find his gun that he confessed he had used in the robbery.  The gun matched the description given by witnesses at the scene who saw the gun, and shells obtained from test firings of petitioner's gun matched the shell recovered from the scene of the robbery.  Police interviewed eyewitnesses, and three later testified at trial that they saw petitioner shoot the victim.  (Dkt. No. 10-6 pp. 242, 346, 412).

### B.   State Court Proceedings

An Onondaga County Grand Jury charged petitioner and his accomplice, Thomas Newman, each with: two counts of Murder in the Second Degree (N.Y. Penal Law § 125.25(1), (3)); three counts of Robbery in the First Degree (N.Y. Penal Law §§160.15(1), (2), (4)); Conspiracy in the Fourth Degree (N.Y. Penal Law § 105.10(1)); Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03); and Petit Larceny (N.Y. Penal Law § 155.25).  (Resp't's Mem. of Law 2).  A pre-trial combined *Huntley*[3] and *Wade*[4] hearing was held on February 15–16, and March 5, 1995.  (Resp't's Mem. of Law 2).  During the hearing, Newman pled guilty to first-degree robbery, and on February 16, 1995, petitioner proceeded to a jury trial.

---

[3] A *Huntley* hearing is held to determine the admissibility of the defendant's statements to police.  *See People v. Huntley*, 15 N.Y.3d 72, 904 N.Y.S.2d 361 (N.Y. 1965).

[4] A *Wade* hearing is held to determine if the pretrial identification procedure was suggestive.  *See United States v. Wade*, 488 U.S. 218 (1967).  Petitioner does not challenge the pretrial identification that was the subject of the *Wade* hearing.

(Resp't's Mem. of Law 2).

On June 12, 1995, the jury found petitioner guilty of Murder in the Second Degree (N.Y. Penal Law § 125.25(3)), Robbery in the First Degree (N.Y. Penal Law § 160.15(1)), and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03). (Dkt. No. 10-8 p. 122–23, 126–29). On July 25, 1995, petitioner was sentenced to concurrent sentences of twenty-three years to life for his murder conviction, seven to twenty-one years for his robbery conviction, and four to twelve years for his weapons possession conviction. (Dkt. No. 10-8 pp. 139–40).

## DISCUSSION

### I. Generally Applicable Law

#### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[5] *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007) (citing 28 U.S.C. § 2254(d)(1), (2)); *Hawkins v. Costello,* 460 F.3d 238, 242–43 (2d Cir. 2006).

A state court decision violates the "contrary to" clause of § 2254(d)(1) when it

---

[5] "Clearly established federal law" in this context "refers only to the holdings of the Supreme Court." *Rodriguez v. Miller*, 537 F.3d 102, 106 (2d Cir. 2008) (citing *Williams v. Taylor,* 529 U.S. 362, 412 (2000)).

4

"reaches a result opposite to the one reached by the Supreme Court on the same question of law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts." *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting *Williams v. Taylor,* 529 U.S. 362, 405–06 (2000)).  A federal habeas court may only grant the writ as an "unreasonable application" of law when the state court's decision "identifies the correct rule of law but applies that principle to the facts of the petitioner's case in an unreasonable way."  *Id.* at 74 (citing *Williams*, 529 U.S. at 413).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro,* 550 U.S. at 473.  Federal habeas courts are also required under AEDPA "to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"  *Id.* (citing § 2254(e)(1)).

## B.    Elements of State Offenses

Under New York law, a person is guilty of second degree murder if, "he commits or attempts to commit robbery[6] . . . and, in the course of and in furtherance of

---

[6] Robbery is defined under New York law as:
> forcible stealing.  A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
> 1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
> 2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal law § 160.00.

such crime of or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants . . ."  N.Y. Penal Law § 125.25(3).  Under New York law, a person is guilty of first degree robbery "when he forcibly steals property and when, in the course of the crime or of immediate flight therefrom, he or another participant in the crime: 1. Causes serious physical injury to any person who is not a participant in the crime . . ."  (N.Y. Penal law § 160.15(1)).  Under New York Law, a person is guilty of second degree criminal possession of a weapon if, "(1) with intent to use the same unlawfully against another, such person . . . (b) possesses a loaded firearm . . ."  N.Y. Penal Law § 265.03 (2011).

## II.   Petitioner's Statements to Police

### A.   Background

On August 30, 1994, Sergeant Patrick Lynch of the Syracuse Police was told that Petitioner was one of two people involved in the August 29, 1994, shooting. (Dkt. 10-4 pp. 169, 186–93).  Sergeant Lynch went to petitioner's house with two other Syracuse Police officers to pick petitioner up for questioning.  *Id.*  Sergeant Lynch testified at the *Huntley* hearing that petitioner agreed to go downtown with the officers to the Criminal Investigation Division, where he was read his Miranda rights and questioned, beginning at about 6:38 p.m.  (Dkt. 10-4 p. 197).  Petitioner denied any involvement in the shooting and gave Sergeant Lynch an alibi.  (Dkt. 10-4 pp. 178–79, 205–06).  Sergeant Lynch sent Investigator Kwiek out to verify the alibi.  *Id.*

After a few breaks that occurred between 8:30 p.m. and 9:45 p.m., Investigator

Kwiek discovered that petitioner's mother did not verify the alibi.  (Dkt. 10-4 pp. 180–81, 207–08).  Sergeant Lynch confronted petitioner with this information.  *Id.*  At that point, petitioner became noticeably shaken and upset, and asked to speak with his mother, but his request was denied.  (Dkt. 10-4 pp. 206–07).  After further questioning, petitioner confessed to shooting the victim.  (Dkt. 10-4 pp. 180–81, 207–08).  At approximately 11:38 p.m., petitioner was again read his Miranda rights, petitioner's statement was typed and presented to him to sign, which he did at about 12:37 a.m.  (Dkt. No. 10-4 pp. 181–84).  Petitioner telephoned his mother at approximately 3:00 a.m. on August 31, 1994.  (Dkt. No. 10-4 p. 220)

Plaintiff argues that his statements were involuntary under the Fifth Amendment, and he was denied his Sixth Amendment right to counsel.  (Pet. p. 7).  Plaintiff supports his argument by claiming that he was denied his right to counsel when he was prevented from speaking with his family, and that police were aware that petitioner's family had hired an attorney to represent petitioner. (Pet. p. 7).  Petitioner raised these issues on appeal, and the appellate division held that petitioner did not give the police sufficient notice that he was invoking his right to counsel, and that petitioner's statements to police were properly admitted at trial.  *See People v. Hall*, 53 A.D.3d 1080, 1081–82 861 N.Y.S.2d 889 (4th Dep't 2008).

## B.    Legal Standards

The test for voluntariness under the due process clause considers "the totality of

all the surrounding circumstances" to determine "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).  The inquiry into the circumstances surrounding the confession, including the length and circumstances of the interrogation and a defendant's prior experience with the legal system, is purely factual, and the state court's findings are afforded a presumption of correctness under 28 U.S.C. § 2254(e)(1).  *Holland v. Donnelly*, 216 F. Supp. 2d 227, 231 (S.D.N.Y. 2002).  *See also Atkinson v. Portuondo*, 269 F. Supp. 2d 57, 60 (E.D.N.Y. 2003).  After being advised of his *Miranda* rights, a defendant may waive his rights and choose to participate with interrogation.  *Edwards v. Arizona*, 451 U.S. 477, 484 (1981).  When determining whether a statement was voluntary, state courts frequently must resolve conflicts in the testimony of police and defendants.  In these circumstances, "the law is clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record."  *Tibbs v. Greiner*, 01-Civ-4319, 2003 WL 1878075 at *9, 2003 U.S. Dist. LEXIS 6193 (S.D.N.Y. 2003).  Petitioner bears the burden of overcoming the presumption of correctness by showing, by clear and convincing evidence, that the state court's conclusion was wrong, based on the evidence before it.  *Id.*

## C.     Application

During the *Huntley* hearing, petitioner's mother testified that when the police arrived at her home to take petitioner to the station for questioning, she told him, "Remember what your aunt said to you about don't say nothing without a lawyer, or nothing like that."[7]  (Dkt. 10-4 p. 265).  Petitioner testified at the *Huntley* hearing that after his mother told him to not say anything because his aunt had a lawyer, he told his mother, "Don't worry about it.  I'll take care of it."  (Dkt. No. 10-4 p. 292).  The appellate division noted that the trial court found that "there was no communication to [petitioner] informing him that an attorney had been retained for him, or that defendant had rejected that attorney."  *People v. Hall*, 53 A.D.3d at 1081.

Petitioner also testified that when he arrived at the Criminal Investigation Division, and Sergeant Lynch read him his rights, petitioner also read and signed each line of the form informing him of his rights.  (*See* Dkt. No. 10-4 pp. 299–301, 308).  Petitioner was questioned for a few hours, and he denied any involvement with the robbery, until Sergeant Lynch informed him that his alibi was not corroborated by his mother.  (Dkt. No. 10-4 p. 207).  At that point, Sergeant Lynch testified that petitioner became "visibly nervous, shaken," and asked to speak with his mother.  (Dkt. No. 10-4

---

[7] Petitioner's mother also testified on cross-examination that she told petitioner, "Don't say nothing, because [presumably this was to the police officer] he has a lawyer and my sister got him a lawyer named Andre."  (Dkt. No. 10-4 p. 284).  On redirect, petitioner's mother stated that she told police when they came to take petitioner in for questioning, "If anything happen to my son, my son has a lawyer because I have got in touch with my sister and my sister got him a lawyer named Andre."  (Dkt. No. 10-4 p. 284).  Later, petitioner's mother clarified that she was only telling petitioner, "Don't worry, he got a lawyer.  My sister got him a lawyer.  If anything, don't worry, because my sister got him a lawyer."  (Dkt. No. 10-4 p. 287).

pp. 207–08).  Sergeant Lynch denied petitioner's request, and told petitioner, "Why don't we get this squared away and then you can call your mother."  (Dkt. No. 10-4 p. 208).  The appellate division reasonably concluded that "the request by defendant during the police interview to call his mother did 'not give the police sufficient notice that the defendant [was] invoking his right to counsel[,]'" and the police conduct did not reflect an improper intention to deny "defendant access to his family in order to bar his exercise of the right to counsel and to obtain a confession or evidence of 'a pattern of isolation and trickery designed to keep the defendant from obtaining counsel[.]'"  *People v. Hall*, 53 A.D.3d at 1081 (citations omitted).

Sergeant Lynch then testified that he continued questioning petitioner about the details of the night of the shooting, and approximately two hours later, petitioner was again read his *Miranda* warnings, and he again agreed to continue talking to Sergeant Lynch. (Dkt. No. 10-4 pp. 181–82).  Sergeant Lynch testified that he then prepared a written statement by typing petitioner's statements into an affidavit, which he then read to petitioner, who signed it.  (Dkt. No. 10-4 p. 182).  Petitioner testified that he read the statement and agreed to sign it.  (Dkt. No. 10-4 p. 304).

As outlined above, it is clear from the *Huntley* hearing that the trial court considered the circumstances surrounding petitioner's statements to police.  Petitioner was not under arrest when he accompanied police to the Criminal Investigation Division.  Because no formal charges had been brought, petitioner's Sixth Amendment right to counsel had not yet attached.  *See Washington v. Conway*, No. 06 CV 13520, 2009 WL 3444956, at *4 (S.D.N.Y. October 23, 2009) (citing *Kirby v.*

10

*Illinois*, 406 U.S. 682, 688 (1972)).  Petitioner was informed of his *Miranda* rights twice during questioning—the first time before any questioning, and the second time before the written statement was prepared.  Each time, petitioner voluntarily continued speaking with Sergeant Lynch, waiving his Fifth Amendment right to have  counsel present at questioning.  Petitioner read and signed the affidavit of his statements confessing to the shooting.  The trial court's conclusion, affirmed by the appellate division, that petitioner's statements were not obtained involuntarily or in violation of his Fifth Amendment right to counsel, are not contrary to, or based on unreasonable applications of Supreme Court precedent.  Nor is the state court determination unreasonable based on the facts presented to the trial court.  Therefore, petitioner's claim for habeas relief, based on the voluntariness of his statements and the alleged denial of his right to counsel, are without merit and should be denied.

## III.    Trial Errors

Petitioner argues that various trial errors denied him his constitutional right to a fair trial.

### A.    Background

#### 1.    Sergeant Lynch's Testimony

Petitioner makes three arguments related to Sergeant Lynch's testimony: 1) the trial court allowed him to relate hearsay, spoken by a non-testifying witness; 2) the prosecutor's redirect of Sergeant Lynch was improper; and 3) the court's restriction of petitioner's cross-examination of Sergeant Lynch regarding Medina White's (Slim's) alibi was also improper.

Petitioner argues that because the trial court allowed Sergeant Lynch to testify about what petitioner's mother told the police when they were checking his alibi without her testifying as to what she said, his rights under the Confrontation Clause were violated.  (Pet. p. 8).  Sergeant Lynch testified that after petitioner told him about his activities during the night of the robbery, Sergeant Lynch sent Investigator Kwiek to verify petitioner's alibi.  (Dkt. No. 10-7 pp. 9–12, 18).  Sergeant Lynch also testified that Investigator Kwiek returned and related the information he gathered from petitioner's mother to Sergeant Lynch.  (Dkt. No. 10-7 p. 19).

On direct, Sergeant Lynch was asked what information Investigator Kwiek got from petitioner's mother.  (Dkt. No. 10-7 p. 19).  Defense counsel objected on grounds of hearsay, and his objection was sustained.  *Id.*  The prosecutor then asked if Investigator Kwiek related the information he obtained from petitioner's mother to Sergeant Lynch.  Defense counsel again objected, and the court allowed Sergeant Lynch to answer yes or no, and he answered yes.  *Id.*  Sergeant Lynch then testified that he confronted petitioner with the information relayed by Investigator Kwiek. (Dkt. No. 10-7 p. 20).

Sergeant Lynch testified that he told petitioner that

his mother told us that he had left the apartment at 10:30 for the purpose of supposedly going over to the Midway Market, which is in the five hundred block of West Onondaga Street around the corner from the apartment building, to buy a hamburger.  He was gone until approximately 11:30.  She stated that before 1:30 in the morning he went down to the Arrow Market at Midland and Bellevue for the purpose of buying the chicken.

12

(Dkt. No. 10-7 p. 20).  When petitioner again objected on hearsay grounds, the court

overruled the objection and explained that "the question is what [Sergeant Lynch]

related to [petitioner], not necessarily what his mother had said.  So this—these are the

words that the officer—what he told [petitioner]." *Id.*

> Later, on redirect, the trial judge instructed the jury:
>
> I have allowed certain testimony to be presented for you wherein this
> officer confronted [petitioner] with certain statements that he believes
> [petitioner's] mother made.  It is for you to consider, not as the truth of the
> mother's statements, but rather the environment in which he was
> confronting [petitioner].  In other words, there has been testimony about
> what his mother said [about] where [petitioner] was.  That is not for you to
> consider whether that is true or not true; it is rather the confrontation and
> how he confronted [petitioner] with this statement.  So, don't get into
> whether or not the mother was telling the truth; that is not the issue in this
> case.

(Dkt. No. 10-7 pp. 92–93).

Sergeant Lynch also testified on direct examination that, before petitioner

confessed to shooting the victim, petitioner stated that he had acted as a lookout while

Slim and Shaquan (Thomas Newman) robbed the Ranch.  (Dkt No. 10-7 p. 23).

Sergeant Lynch testified that petitioner told him that, while acting as a lookout, he

heard a shot, and Shaquan later told him that Slim had shot someone who was

uncooperative.  (Dkt. No. 10-7 p. 23–24).  Sergeant Lynch then testified that he told

petitioner that he did not believe that Slim was there, that no one at the scene

mentioned a third party, and that Slim's alibi had checked out.  (Dkt. No. 10-7 pp.

24–25).

During cross-examination, defense counsel elicited from Sergeant Lynch that Slim had implicated petitioner as someone who might have been involved in the robbery.  (Dkt. No. 10-7 pp. 68, 80).  On redirect examination, Sergeant Lynch testified that Slim had told the police that, about one week prior to the robbery, petitioner had talked to Slim about robbing the Ranch, and that Slim knew petitioner had a small silver handgun.  (Dkt. No. 10-7 p. 95).  Sergeant Lynch also testified that Slim's alibi had been verified by police.  (Dkt. No. 10-7 pp. 95–96).

During recross-examination, defense counsel first asked what the nature of Slim's alibi was, and the prosecutor objected on grounds of hearsay. (Dkt. No. 10-7 p. 109).  The prosecutor's objection was sustained, and defense counsel continued, asking "where was Medina White at 11:30 or say from quarter—from 11 to 11:30 on the night in question?"  (Dkt. No. 10-7 pp. 111–112).  The court again sustained the prosecutor's objection.  *Id.*  However, defense counsel then elicited from Sergeant Lynch that Slim's alibi consisted of "a very vague geographical location" on "[t]he west side of the city."  *Id.*

### 2.    Sharon Frazier's Testimony

Petitioner argues that the prosecutor's cross-examination of Sharon Frazier was improper, in that it exceeded the scope of direct examination.  This alleged impropriety, petitioner asserts, amounted to prosecutorial misconduct.  (Pet. p. 10).

Sharon Frazier, a defense witness, testified as to her relationship with petitioner as his aunt, his upbringing in Jamaica, how and when he arrived in the United States, and how often she saw and spoke with petitioner.  (Dkt. No. 10-7 pp. 275–288).  On

cross-examination, the prosecutor elicited that Ms. Frazier had heard that petitioner may have been involved in a shooting, that she took the rumor seriously, and that she called her attorney that same night and left a message that "My nephew is in trouble and I need a lawyer." (Dkt. No. 10-7, pp. 289–92).

### B.   Legal Standards

#### 1.   Confrontation Clause

The Confrontation Clause forbids "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).  However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985).

#### 2.   Evidentiary Issues

An evidentiary ruling is only redressable in a federal habeas corpus proceeding if petitioner can show an error "of constitutional dimension," that deprived him of "fundamental fairness." *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988).  If the state court's evidentiary error under state law resulted in the omission of evidence, the error rises to the level of a constitutional violation "if the omitted evidence creates a reasonable doubt that did not otherwise exist." *Perez v. Phillips*, 210 Fed. App'x. 55, 56 (2d Cir. 2006) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925).  The Second Circuit utilizes two steps to determine whether the appellate division's analysis of

15

state-law evidentiary rulings are an "unreasonable application" of "clearly established Federal Law." *Bell v. Ercole*, 368 Fed. App'x. 216, 218 (2d Cir. 2010).  First, the court examines "'the propriety of the trial court's evidentiary ruling.'" *Id.* (quoting *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006).  This analysis does not hinge on whether the trial court was correct or incorrect, but rather "in ascertain[ing] whether the appellate division acted within the limits of what is objectively reasonable." *Id.* (quoting *Hawkins v. Costello*, 460 F.3d at 244) (alteration in the original).  If the challenged ruling was erroneous under state law, the court then determines "'whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *Id.* (quoting *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996) (alteration in the original).  If the challenged ruling was correct under state law, the only way a district court can find a constitutional violation is if the district court finds that the appellate division applied a rule that is "'arbitrary or disproportionate to the purposes it [was] designed to serve.'" *Id.* (quoting *Hawkins v. Costello*, 460 F.3d at 245).

When a trial court limits cross-examination during trial, "every limitation on a petitioner's right to cross-examine a witness does not present a constitutional violation." *Cummings v. Burge*, 581 F. Supp. 2d 436, 448 (W.D.N.Y. 2008).  In addition, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, . . . confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *United States v. Shvartsman*, 317 Fed. App'x.

16

68, 70 (2d Cir. 2009) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

### C.   Application

#### 1.   Confrontation Clause

The appellate division held that Sergeant Lynch's testimony as to what the officer told petitioner regarding his mother's failure to corroborate his alibi "was not offered to establish the truth of the mother's statements but, rather was offered to establish the effect of the mother's statements on [petitioner] . . . and 'to explain why the defendant confessed to the police when he did.'" *People v. Hall*, 53 A.D.3d at 1082 (quoting *People v. Perez*, 9 A.D.3d 376, 377, 779 N.Y.S.2d 584 (2d Dep't), *lv denied*, 3 N.Y.3d 710, 785 N.Y.S.2d 38 (Table) (N.Y. 2004)). The appellate division also found that the mother's statements were not admitted for their truth, but for the purpose of allowing the jury to better understand the circumstances surrounding petitioner's confession. The jury was explicitly instructed by the trial judge to not be concerned with whether petitioner's mother was telling the truth. The appellate division's holding that the statements were not admitted for their truth accords with the exception found in *Crawford*. 541 U.S. at 59 n.9.

The Appellate Division found that it was precluded from considering petitioner's Confrontation Clause challenge to Sergeant Lynch's testimony on redirect about Slim's alibi.[8] *People v. Hall*, 53 A.D.3d at 1082. Defense counsel did not

---

[8] The appellate division also noted, however, that defense counsel "opened the door" to the testimony, and that petitioner was given the opportunity to present his defense on re-cross-examination of Sergeant Lynch. *People v. Hall*, 53 A.D.3d at 1082.

object to Sergeant Lynch's testimony regarding Slim's alibi.  New York's

contemporaneous objection rule provides that issues not raised at trial, and issues that

are not preserved by a specific objection at the time of a claimed error, will not be

considered on appeal.  N.Y. Crim. Proc. Law § 470.50(2).  An "adequate and

independent" state court finding of procedural default will bar federal review of the

constitutional claim unless petitioner demonstrates either (1) good cause for the

default and actual prejudice resulting from the alleged violation of federal law; or (2)

that the denial of habeas relief would leave unremedied a "fundamental miscarriage of

justice," *i.e.*, that he is actually innocent.  *Calderon v. Thompson*, 523 U.S. 538, 559

(1998); *Coleman v. Thompson*, 501 U.S. 722, 748–750 (1991); *Murray v. Carrier*, 477

U.S. 478, 496 (1986)*; Fama v. Commissioner*, 235 F.3d 804, 809 (2d Cir. 2000).

   Plaintiff has not established cause[9] or prejudice, and his claim based on alleged

errors during Sergeant Lynch's testimony is procedurally barred from federal habeas

review.  *Id.*  Additionally, the strength of the case against petitioner negates any

prejudice that may have resulted from the alleged errors.  As stated above, petitioner

gave a signed confession that corroborated the testimony given by numerous

---

   [9] Petitioner also raises counsel's failure to object to this and other alleged evidentiary errors in
the context of ineffective assistance of counsel, which, if successful, could constitute cause.  *See
Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  In order to establish cause for a procedural default,
the ineffective assistance of counsel claim must be exhausted in the state courts as an independent
claim.  *Id.*  For the reasons discussed in the section analyzing petitioner's ineffective assistance of
counsel claims, this court finds that counsel was not ineffective.  Therefore, even though petitioner
properly exhausted his ineffective assistance of counsel claim, it cannot serve to establish cause for
the purpose of overcoming the procedural default.

eyewitnesses, the shell casing found at the scene matched shell casings obtained from test firings made with his gun, and eyewitnesses later identified petitioner as the shooter.  Accordingly, petitioner's claims regarding the Confrontation Clause should be dismissed.

### 2.   Evidentiary Issues

Petitioner alleges that the trial court erred in its rulings regarding the scope of testimony given by Sergeant Lynch and Sharon Frazier.  Petitioner claims that the defense was impermissibly limited during cross-examination of Sergeant Lynch, because defense counsel was not allowed to explore the theory that Slim was the "main shooter in the case."  (Pet. p. 10).  Petitioner further alleges that the prosecutor was impermissibly allowed, on redirect examination of Sergeant Lynch, to ask about Slim allegedly telling police that he had solicited petitioner to rob the Ranch, and to elicit testimony that Slim's alibi had checked out.  Defense counsel sought to exclude evidence that incriminated petitioner, and sought to offer incriminating evidence against Slim in order to support the defense theory that someone else, likely Slim, was the shooter.

Petitioner's counsel eventually elicited the substance of Slim's alibi on re-cross examination (Dkt. No. 10-7 p. 111), referenced Slim's alibi in summation (Dkt. No. 10-7 pp. 319–20), and highlighted the fact that Jeremy Harlow told the police, on the day after the crime, that Slim was the shooter (Dkt. No. 10-7 pp. 343–44).  Petitioner's theory that Slim was the shooter, while not covered in cross-examination of Sergeant

Lynch, was presented to the jury via other avenues.  This court finds that the trial court's decisions to limit cross-examination and direct examination of Sergeant Lynch did not rise to the level of constitutional errors, and are thus non-cognizable on habeas review.  28 U.S.C. § 2254(a).

Petitioner argues that the prosecutor's cross-examination of defense witness Sharon Frazier exceeded the scope of direct examination when the trial court allowed the prosecutor to cross-examine Ms. Frazier about whether she had heard rumors that petitioner had been involved in a shooting, whether she took the rumors seriously, and if this was the reason she called her attorney.  (Pet. pp. 10–11).  Petitioner alleges that the cross-examination violated the "general rule" that direct examination limits the scope of cross-examination, and the additional information elicited by the prosecutor on cross-examination was irrelevant or prejudicial, because the prosecutor "improperly suggested during cross. . . that Mrs. Sharon Frazier had retained an [a]ttorney for [p]etitioner because she thought he was guilty as charged."  (Pet. pp. 10–11).

Defense counsel objected once during the prosecutor's cross-examination of Ms. Frazier based on the form of a question.  Counsel did not object on the basis that the prosecutor had exceeded the scope of the direct examination or had introduced irrelevant or prejudicial information.  Because petitioner did not object to the testimony, he failed to make the trial court aware of any alleged error.

The appellate division held that petitioner raised his arguments regarding Ms.

Frazier's testimony for the first time on appeal, thereby precluding their review.  *See People v. Hall*, 53 A.D.3d at 1082–83.  This ruling gives rise to a procedural bar to federal habeas review.   Petitioner has neither shown cause nor prejudice resulting from his counsel's failure to object.  Accordingly, petitioner's claims based on alleged evidentiary errors relating to Sergeant Lynch's and Sharon Frazier's testimony should be dismissed.

### E.    Combination of Errors

Finally, petitioner alleges that the combination of trial errors denied him a fair trial.  In some circumstances, cumulative errors may "serve as the basis for habeas corpus relief."  *Brumfield v. Stinson*, 297 F. Supp. 2d 607, 621 (W.D.N.Y. 2003) (Report and Recommendation of Foschio, M.J., adopted by Elfvin, D.J.) (citing *Sanders v. Sullivan*, 701 F. Supp. 1008, 1012 (S.D.N.Y. 1988)).  However, in order for cumulative errors to justify habeas relief, the court must find that they are actually "errors."  *Joyner v. Miller*, No. 01 Civ. 2157, 2002 WL 1023141, at * 13, 2002 U.S. Dist. LEXIS 15160 (S.D.N.Y. Jan. 7, 2002) (citations omitted).  The court must first find errors, and if no single error justifies a reversal, all the errors must be assessed for their prejudicial effect.  *Sanders*, 701 F. Supp. at 1013; *Brumfield*, 297 F. Supp. 2d at 621.

In order for the habeas petitioner to be successful on such a claim, the errors must be 'so prejudicial that they rendered petitioner's trial [ ] fundamentally unfair.'"  *Joyner*, 2002 WL 1023141, at * 13 (quoting *Collins v. Scully*, 878 F. Supp. 452, 460

(E.D.N.Y.1995).  "Fundamental fairness" has been defined very narrowly.  *Dowling v. United States*, 493 U.S. 342, 352 (1990).  It is not sufficient to simply aggregate rulings that might have been unfavorable to the petitioner.  *Collins*, 878 F. Supp. at 460 (citing *United States v. Rivera*, 900 F.2d 1462, 1470–71 (10th Cir.1990) (*en banc*)).

The appellate division held that petitioner "was not denied a fair trial by the cumulative effect of any alleged errors."  *People v. Hall*, 53 A.D.3d at 1083.  As discussed above, plaintiff has failed to establish the existence of errors, that, even taken cumulatively, would rise to the level of a constitutional violation of his right to a fair trial.  First, plaintiff's complaints about the inclusion of hearsay testimony are without merit.  The trial court appropriately allowed Sergeant Lynch to testify about what he told petitioner regarding the failure of his mother to corroborate his alibi, and the prosecutor appropriately explored the police investigation of Slim on redirect, after Sergeant Lynch testified on cross-examination that Slim had implicated petitioner as the shooter.  This court does not find that the trial court's allowance of the cross-examination of Sharon Frazier was an error.  However, even assuming that allowing the prosecutor to cross-examine Ms. Frazier as to why she called an attorney was an error, the testimony was not prejudicial to the defendant (as discussed below), and the discussion did not render the trial unfair.  Finally, the curative instruction given to the jury after defense counsel's objection during the prosecutor's summation (also discussed below) prevented any possible prejudice to petitioner.  Accordingly,

22

petitioner's claim based on cumulative error should be dismissed.

## IV.  Prosecutorial Misconduct

Petitioner also alleges that the prosecutor's summation amounted to prosecutorial misconduct, depriving him of his right to a fair trial and due process of law.  (Pet. p. 11).  During her summation, the prosecutor referred to Sharon Frazier's testimony, stating that "[t]he word on South Ave. [that Sharon Frazier] took so seriously that night . . . [when] Sharon Frazier was making a phone call [was that t]here was a robbery.  Somebody got shot.  My nephew could be involved.  And we need a lawyer."  (Dkt. No. 10-8 p. 5).  The prosecutor went through the written confession, highlighting points that she thought had been corroborated through other witnesses, and pointing out where she thought petitioner was not truthful.  (Dkt. No. 10-8 pp. 24–36).

The prosecutor also asked the jury "not to get bogged down in insignificant minutiae of did this witness say this, or did he say that, or, oh, did he say maybe, or did he say possibly, and did he say that I told her this, or maybe I implied this to her, and did he say that it was blue trim or black trim."  (Dkt. No. 10-8 pp. 38–39).  She then encouraged them to "back up, back up and look at the whole picture and back up and look at the whole story" and "don't get bogged down in these little tiny things." (Dkt. No. 10-8 p. 39–40).

At the end of her summation, the prosecutor urged the jury to "look at [petitioner] through [the victim's] eyes," and "have the courage to tell [petitioner] that

what he did was wrong, that what he did is criminal, and tell him that the people of Onondaga County will not stand up for anyone who could coldly end the life of another individual." (Dkt. No. 10-8 pp. 43–44).  Petitioner's counsel then objected, and the court gave a curative instruction, telling the jury that "they are not deciding on passion or sympathy, they are deciding on the facts and the law in this case." (Dkt. No. 10-8 pp. 44–45).

## A.    Legal Standards

A claim of prosecutorial misconduct warrants habeas corpus relief only where the prosecutor's remarks so infected the trial with unfairness that the resulting conviction is a denial of due process.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  The habeas court must distinguish between "'ordinary trial error of a prosecutor and that sort of egregious misconduct . . . amounting to a denial of constitutional due process.'"  *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  In order to show a constitutional violation, the petitioner must demonstrate that he suffered substantial prejudice from the prosecutor's remarks.  *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990).  Three factors are considered in determining whether a prosecutor's summation created "substantial prejudice":  the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.  *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir.1998).

**B.    Application**

As noted by the appellate division, petitioner only objected to one comment during the prosecutor's summation, and the court issued a curative instruction, reminding the jury that they were to analyze the facts and not make their determinations based on emotion.  Jurors are presumed to follow a court's instructions.  *See CSX Transp., Inc. v. Hensley*, __ U.S. __ , 129 S.Ct. 2139, 2141 (2009).  The curative instruction shielded petitioner from any prejudicial effect that could have stemmed from the complained-of comment made by the prosecutor.  The appellate division found that because petitioner did not object to other comments during the prosecutor's summation, those allegations based on prosecutorial misconduct were not preserved for appellate review.  As discussed above, petitioner's failure to preserve issues on appeal and the appellate division's refusal to consider them acts as a procedural bar to federal habeas review.  Plaintiff has also failed to establish cause and prejudice as to these issues.  As noted above, any possible prejudice that could have resulted from the alleged errors would have been negated by the strength of the evidence against petitioner.  Accordingly, plaintiff's claims based on prosecutorial misconduct should be dismissed.

**V.    Ineffective Assistance of Trial Counsel**

Petitioner claims that defense counsel was ineffective in that he purportedly failed to object to the following alleged errors and/or prosecutorial misconduct: (1) "hearsay" testimony regarding statements made by petitioner's mother, (2) improper

redirect examination of Sergeant Lynch, (3) prejudicial cross examination of Sharon Frazier, (4) improper statements by the prosecutor during her summation, (5) erroneous instructions given by the court regarding circumstantial evidence, and (6) the failure by the court to remind the jury not to speak with one another about the case during a recess.  (Pet. p. 12).  For the reasons stated below, petitioner's claims of ineffective assistance do not support federal habeas relief.

### A.    Supreme Court Precedent

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's performance fell below an objective standard of professional reasonableness; and (2) but for counsel's alleged errors, the results of the proceedings would have been different, and as such, petitioner suffered prejudice. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  A reviewing court must determine, not whether the state court's rejection of the ineffective assistance of counsel claim was correct, but whether it was "objectively unreasonable" in applying the *Strickland* standards.  *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006) (citing *Williams*, 529 U.S. at 409).

### B.    Application

I will first address the particular alleged errors and omissions which petitioner contends constituted ineffective assistance by his trial counsel.  Petitioner claims that

trial counsel failed to object to "hearsay" testimony given by Sergeant Lynch.  As discussed above, trial counsel did, in fact, object to Sergeant Lynch's testimony regarding petitioner's mother failing to corroborate his alibi.  The objection was overruled because the statement was not offered for its truth, but, rather, to illustrate the situation in which petitioner confessed.  (Dkt. No. 10-7 p. 20).  This ruling was not error, and the jury was also instructed that they were not to consider if the statement was or was not true.  (Dkt. No. 10-7 pp. 92–93).  Because defense counsel objected, and because the ruling on his objection was correct, petitioner cannot establish that defense counsel's performance fell below an objective standard of reasonableness, or that he was prejudiced in any way.

Trial counsel did not object to the redirect examination of Sergeant Lynch, who testified that Slim informed police that petitioner had a gun and had previously discussed robbing the ranch with Slim.  However, trial counsel had previously opened the door to this testimony by eliciting on cross-examination that Slim had implicated petitioner.  Counsel's conduct was consistent with a defense strategy of suggesting that the shooter was Slim and that Slim was trying to blame petitioner, all while creating doubt as to petitioner's oral and written confessions.  By opening the door on cross-examination and choosing not to object on redirect, defense counsel allowed more information about Slim, his vague alibi, and his prior discussion of robbing the

Ranch to reach the jury. Even though trial counsel's strategy was ultimately unsuccessful, when evaluating the constitutionality of trial representation, "courts should not confuse true ineffectiveness with losing trial tactics or unsuccessful attempts to advance the best possible defense." *Henry v. Poole*, 409 F.3d 48, 58 (2d Cir. 2005). *See also McKee v. United States*, 167 F.3d 103, 106 (2d Cir.1999) (courts should not use hindsight to second-guess sound tactical decisions made by attorneys) (citing *Strickland*, 466 U.S. at 689).

Trial counsel did not object to the cross-examination of Sharon Frazier when she testified as to the reason she called her attorney the night of the shooting. Even assuming trial counsel should have objected to this testimony—and this court is **not** finding that the failure to object was an unreasonable error of professional judgment under the first prong of *Strickland*—the information was not prejudicial to petitioner under the second prong of *Strickland*. Ms. Frazier testified that she took the rumors that her nephew was involved in a shooting seriously, so she called her attorney for help. Ms. Frazier testified that she was "curious [as to] what went on" and "concerned." (Dkt. No. 10-7 p. 292). The mere fact that the rumors were circulating gave Ms. Frazier reason to think her nephew might be approached by the authorities as part of investigating those rumors, and he might need help from a lawyer. Ms. Frazier's testimony did not indicate that she believed the rumors were true, and it

28

certainly did not provide any evidence that petitioner was, in fact, involved in the robbery or the shooting.  Accordingly, counsel's failure to object to the Frazier cross-examination does not support petitioner's claim of ineffective assistance of trial counsel.

Petitioner claims that trial counsel failed to object to "improper comments" made by the prosecutor during her summation.  (Pet. p. 12).  As discussed above, trial counsel made one objection during the prosecutor's summation, for which a curative instruction was given.  As to defense counsel's decision not to raise any other objections during the prosecutor's summation, it was a reasonable tactical decision not to draw more attention to the weaknesses in petitioner's case.  *See, e.g., Gatto v. Hoke*, 809 F. Supp. 1030, 1039 (E.D.N.Y.) ("counsel's failure to object to the prosecutor's summation represents his tactical decision to avoid underscoring the prosecutor's statements so as to draw the jury's attention to them"), *aff'd mem.*, 986 F.2d 500 (2d Cir.1992); *Evans v. Bennett*, 98CV1706 (LEK/DRH), 2001 WL 36006042, at * 7 (N.D.N.Y. Nov. 20, 2001) (even if prosecutor's comments during his summation were prejudicial, defense counsel's decision not to object was a reasonable tactical decision which avoided highlighting the comments to the jury).  And, there is no reasonable possibility that, given the strength of the People's case, additional objections to the summation would have affected the outcome of the trial.

Finally, petitioner argues that defense counsel should have objected to the trial court's allegedly erroneous instruction that the jury could consider both circumstantial and direct evidence, as well as the trial court's failure to instruct the jury not to talk about the case prior to dismissing them for a recess.  (Pet. p. 12).  First, the court did not err when it instructed the jury that "there are two kinds of evidence: direct evidence and circumstantial evidence . . . [and] you are entitled to consider both kinds of evidence."  (Dkt. No. 10-6 p. 194).  Nothing in these instructions prejudiced petitioner.  (*See Hernandez v. Bennett*, 129 F. App'x 642, 644 (2d Cir. 2005) ("Failing to object to a charge that does not contain error does not fall below an objective standard of reasonableness.")

As to counsel's failure to object when the court dismissed the jurors without admonishing them not to talk about the case, read anything about it in the media, visit the crime scene, or form an opinion, the court had already instructed the jury as to their duties when they were dismissed for recess in the court's preliminary instruction at the start of trial.  (Dkt. No. 10-6 p. 199).  The court also gave similar instructions throughout the trial.  (Dkt. No. 10-6 pp. 266, 537, Dkt. No. 10-7 p. 356).

Petitioner's objection to the jury instruction is based on an alleged violation of New York Criminal Procedure Law § 270.40.  "[I]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury

30

on matters of state law, the petitioner must show not only that the instruction misstated

state law but also that the error violated a right guaranteed to him by federal law."

*Davis v. Strack*, 270 F.3d 111, 123 (2d. Cir. 2001). "[N]ot every ambiguity,

inconsistency, or deficiency in a jury instruction rises to the level of a due process

violation.  The question is 'whether the ailing instruction . . . so infected the entire

trial that the resulting conviction violates due process.'"  *Middleton v. McNeil*, 541

U.S. 433, 437 (2004) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).

        Petitioner has failed to establish that these alleged errors so infected the trial as

to render his conviction a violation of due process, or that defense counsel's alleged

failure to object to these alleged errors constitutes ineffective assistance of counsel.

This court does not find that a failure to instruct the jury on one occasion when

dismissing them for recess constitutes an error of constitutional dimension, given that

the instruction was given throughout the trial and as part of the preliminary instruction

at the start of trial.

        Petitioner's claims of ineffective assistance of trial counsel were decided on the

merits on direct appeal.  The Appellate Division held that petitioner received

"meaningful representation" overall during trial.[10]  *People v. Hall*, 53 A.D.3d at 1081.

---

[10] Some judges in the Second Circuit have raised concerns about the differences between the
New York standards for evaluating ineffective assistance of counsel and the *Strickland* standard
applied by the federal courts.  *See, e.g., Henry v. Poole*, 409 F.3d 48, 70–71 (2d Cir. 2005); *Parker v.
Ercole*, 582 F. Supp. 2d 273, 292 n.9 (N.D.N.Y. 2008).  However, several panels of the Second

The Appellate Division's rejection of petitioner's ineffective assistance of counsel claim was not objectively unreasonable, nor contrary to clearly established Supreme Court precedent.

In this case, trial counsel attempted to suppress petitioner's oral and written statements to the police. During the *Huntley* hearing, defense counsel cross-examined the People's witnesses and called five witnesses for the defense. (Dkt. No. 10-7 pp. 167–336). Defense counsel participated in jury selection and gave an opening statement urging the jury to reject petitioner's allegedly involuntary confession and allegedly unreliable identification testimony. (Dkt. No. 10-6 pp. 216–17, 218–22). Throughout the trial, defense counsel raised numerous objections (*See, e.g.* Dkt. No. 10-6 pp. 460–61, 491, 494–96, 512, 522, Dkt. No. 10-7 p. 19–20), vigorously cross-examined witnesses called by the prosecution (Dkt. No. 10-6 pp. 268–313, 327–32, 355–62, 365–66, 445–53, 468–81, 496–503, 504–08, 517–18, Dkt. No. 10-7 pp. 60–91, 109–19, 120–23, 124–25, 150–60, 161–62, 177–84, 190–95, 196–97, 243–46) and pursued a theory that someone other than the petitioner was the actual shooter (*See* Dkt. No. 10-7 pp. 327, 341, 343). It is evident that defense counsel actively pursued petitioner's interests during trial.

---

Circuit have held that, for the purposes of review of a habeas petition under 28 U.S.C. § 2254(d), New York's "meaningful representation" standard is not "contrary to" the *Strickland* standard. *Rosario v. Ercole*, 601 F.3d 118, 124–26 (2d Cir. 2010) (collecting cases and comparing the two standards).

Whether counsel's performance at trial is evaluated as a whole, based on the "meaningful representation" standard, or whether petitioner's specific claims of ineffective assistance are distinctly evaluated, petitioner states no basis for federal habeas relief.  Additionally, because petitioner's counsel was not ineffective in failing to object to alleged errors at trial, petitioner may not use ineffective assistance of counsel as "cause" for his claims blocked by procedural default.

## VI.  <u>Sentence</u>

Petitioner claims that his sentence of 23 years to life is harsh and excessive, because "the evidence was very weak against petitioner."  (Pet. p. 14).  Petitioner's conviction for Murder in the Second Degree constitutes a class A-I felony, Robbery in the First Degree constitutes a class B felony, and Criminal Possession of a Weapon in the Second Degree constitutes a class C felony.  N.Y. Penal Law §§ 125.25(3), 160.15(1), 265.03.  Under New York Law, sentences of imprisonment for felonies are indeterminate, with the court imposing a "maximum term in accordance with the provisions of subdivision two of [N.Y. Penal Law § 70.00] and the minimum period of imprisonment shall be as provided in subdivision three of [N.Y. Penal Law § 70.00].

For a class A-I felony, the minimum period is between fifteen and twenty-five years, and the maximum period is life imprisonment.  N.Y. Penal Law §§ 70.00(1), (2)(a), (3)(a)(i).  For a class B felony, the minimum period is between one year and on-

third of the maximum term imposed, and the maximum term can not exceed twenty-

five years.  N.Y. Penal Law §§ 70.00(2)(b), (3)(b).  For a class C felony, the minimum

period is between one year and one-third of the maximum term imposed, and the

maximum term cannot exceed fifteen years.  N.Y. Penal Law §§ 70.00(2)(c), (3)(b).

Petitioner is still serving his original sentence.

### A.    Supreme Court Precedent

The Eighth Amendment forbids only *extreme* sentences which are "grossly

disproportionate" to the crime of conviction.  *Lockyer v. Andrade*, 538 U.S. 63, 72–73

(2003).  The Second Circuit has consistently held that "[n]o federal constitutional

issue is presented where . . . the sentence is within the range prescribed by state law."

*White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).  *See also*, *Ewing v. California*,

538 U.S. 11, 25 (2003); *Ross v. Conway*, 9:08-CV-731, 2010 U.S. Dist. LEXIS

141102, *52, 2010 WL 5775092 (N.D.N.Y. Dec. 6, 2010).

### C.    Application

In this case, petitioner's sentences are within the range of sentences for class A-

I felonies, class B felonies, and class C felonies.  Thus, petitioner has not presented a

cognizable constitutional claim that his sentence was harsh and excessive under the

Eighth Amendment.  Petitioner's claim that his sentence was unconstitutional should

be dismissed.

## VII.  Certificate of Appealability

For the reasons set forth above, the petition for a writ of habeas corpus filed by

34

Petitioner should be denied and dismissed. In addition, no certificate of appealability ("COA") should issue in this case because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("§ 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right'"); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"); *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (if the denial of a habeas petition is based upon procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation"); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), cert. denied 531 U.S. 873 (2000).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Petition be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no certificate of appealability should be issued.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Dated: April 18, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge

36